# United States Court of Appeals for the Federal Circuit

2008-1078

TITAN TIRE CORPORATION
and THE  GOODYEAR TIRE & RUBBER COMPANY,

Plaintiffs-Appellants,

v.

CASE NEW HOLLAND, INC., CNH AMERICA LLC,
and GPX INTERNATIONAL TIRE CORPORATION,

Defendants-Appellees.

Kent A. Herink, Davis, Brown, Koehn, Shors & Roberts, P.C., of Des Moines, Iowa, argued for plaintiffs-appellants.  With him on the brief were David A. Tank and Deborah M. Tharnish.

William R. Grimm, Hinckley, Allen & Snyder LLP, of Providence, Rhode Island, argued for defendants-appellees.  With him on the brief was Eric D. Levin, of Boston, Massachusetts.

Appealed from:  United States District Court for the Southern District of Iowa

Judge James E. Gritzner

# United States Court of Appeals for the Federal Circuit

2008-1078

TITAN TIRE CORPORATION
and THE GOODYEAR TIRE & RUBBER COMPANY,

Plaintiffs-Appellants,

v.

CASE NEW HOLLAND, INC., CNH AMERICA LLC,
and GPX INTERNATIONAL TIRE CORPORATION,

Defendants-Appellees.

Appeal from the United States District Court for the Southern District of Iowa in case no. 4:07-CV-00063, Judge James E. Gritzner.

———————————————

DECIDED: June 3, 2009

———————————————

Before NEWMAN, PLAGER, and GAJARSA, <u>Circuit Judges</u>.

PLAGER, <u>Circuit Judge</u>.

In this design patent case, in which the patentee sought a preliminary injunction, we first clarify the requirements for such an injunction. We then determine, in light of that clarification and the evidence before the trial court, whether that court was correct in denying the sought-for relief. Because we conclude that under the applicable legal standard the trial court did not abuse its discretion in denying the injunction, we affirm.

BACKGROUND

Appellant The Goodyear Tire & Rubber Company ("Goodyear") owns U.S. Design Patent No. 360,862 ("the '862 patent"), which claims a design for a tractor tire. Appellant Titan Tire Corporation ("Titan") is a licensee with the right to enforce the '862 patent. Figure 1 of the '862 patent is a perspective view of a tractor tire showing the claimed design:



FIG-1

In February 2007, Goodyear and Titan (collectively, "Titan") filed a complaint for patent infringement against Appellee Case New Holland, Inc. ("Case") in the United States District Court for the Southern District of Iowa. Titan alleged that Case sells backhoes equipped with tires that infringe the '862 patent.

In May 2007, Titan filed a motion for a preliminary injunction to prohibit Case from selling backhoes with infringing tires. After the trial court held a hearing on the motion, Titan filed an amended complaint adding Appellees CNH America LLC ("CNH") and GPX International Tire Corporation ("GPX") as defendants. The addition of CNH

apparently was in response to the statement in Case's answer that CNH, not Case, is the corporate entity that sells backhoes in the United States. GPX is the manufacturer of the "Easy Rider" model tire that allegedly infringes the '862 patent.

The trial court denied Titan's motion for a preliminary injunction. Titan Tire Corp. v. Case New Holland, Inc., No. 4:07-CV-00063, 2007 WL 2914513 (S.D. Iowa Oct. 3, 2007) ("Preliminary Injunction Order"). The court found Titan was likely to succeed in showing infringement and was likely to withstand Case's challenge to the validity of the '862 patent on the ground that the design is primarily functional, but that Titan was not likely to withstand Case's challenge to the patent's validity on obviousness grounds. While finding that the other three preliminary injunction factors—irreparable harm, balance of the hardships, and public interest—weighed in favor of granting an injunction, the trial court concluded that Titan's failure to establish a likelihood of success on the validity issue was sufficient to defeat the motion for a preliminary injunction. Since the trial court concluded that a preliminary injunction should not issue on the record before it, the court determined that it was unnecessary to decide whether an injunction would be proper against CNH and GPX, the parties added to the case after the trial court's hearing on the motion.

Titan appeals from the trial court's denial of its motion for a preliminary injunction. We have jurisdiction pursuant to 28 U.S.C. § 1292(c)(1).

DISCUSSION

A.

When a patentee sues an alleged infringer for patent infringement and, for the purpose of immediately preventing further alleged infringement, moves under 35 U.S.C.

§ 283 for the extraordinary relief of a preliminary injunction, the patentee's entitlement to such an injunction is a matter largely within the discretion of the trial court. Genentech, Inc. v. Novo Nordisk, A/S, 108 F.3d 1361, 1364 (Fed. Cir. 1997). On appeal, a trial court's decision to grant or deny a preliminary injunction, made after taking into account the relevant factors, will be overturned only upon a showing that the court abused its discretion. Id. Abuse of discretion is a deferential standard of review that requires a showing that "the court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings." Id.

The factors the trial court considers when determining whether to grant a preliminary injunction are of longstanding and universal applicability. As the Supreme Court recently reiterated, there are four: "[a] plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008) (citing Supreme Court cases). We note in passing that some cases state the first factor as requiring a "reasonable" likelihood of success on the merits.[1] It is not clear whether the addition of "reasonable" adds

---

[1] See, e.g., Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1374 (Fed. Cir. 2006) (quoting Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001)); Helifix Ltd. v. Blok-Lox, Ltd., 208 F.3d 1339, 1350 (Fed. Cir. 2000); Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1451 (Fed. Cir. 1988) (citing T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc., 821 F.2d 646, 647 (Fed. Cir. 1987)).

anything substantive to the test,[2] but in any event, for our purposes the Supreme Court's current statement of the test is the definitive one.

In this case, in denying the preliminary injunction, the trial court specifically stated that Titan had the burden of demonstrating a likelihood of success on the merits, including a showing that Titan will likely withstand Case's challenge to the validity of the '862 patent. Preliminary Injunction Order, 2007 WL 2914513, at *4. The trial court also made reference to a requirement that Case demonstrate a "substantial question" regarding the patent's validity. Id. at *8.

In the appeal before us, the parties stated the issue as whether Case succeeded before the trial court in raising a substantial question of invalidity. As we shall explain, when the issue is expressed only in terms of whether the alleged infringer raised a substantial question of invalidity, litigants may err in addressing the proper presumptions and burdens of proof in their case, and their arguments may reflect a possible misunderstanding of the applicable law.

With regard to the first factor—establishing a likelihood of success on the merits—the patentee seeking a preliminary injunction in a patent infringement suit must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent. See Genentech, 108 F.3d at 1364. In assessing whether the patentee is entitled to the injunction, the court views the matter in light of the burdens and presumptions that will inhere at trial. See Gonzales v. O Centro

---

[2] See 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.3 (2d ed. 1985) ("The courts use a bewildering variety of formulations of the need for showing some likelihood of success . . . . But the verbal differences do not seem to reflect substantive disagreement.").

Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 429 (2006) ("[T]he burdens at the preliminary injunction stage track the burdens at trial.").[3]

*At trial*, as we explained in our recent case of Technology Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1327 (Fed. Cir. 2008), an issued patent comes with a statutory presumption of validity under 35 U.S.C. § 282.  Because of this presumption, an alleged infringer who raises invalidity as an affirmative defense has the ultimate burden of persuasion to prove invalidity by clear and convincing evidence, as well as the initial burden of going forward with evidence to support its invalidity allegation.[4]  Tech. Licensing, 545 F.3d at 1327.  Once the challenger presents initially persuasive evidence of invalidity, the burden of going forward shifts to the patentee to present contrary evidence and argument.  Id.  Ultimately, the outcome of the trial on this point will depend on whether, in light of all the evidence, the party challenging the patent's validity has carried its burden of persuasion to prove by clear and convincing evidence that the patent is invalid.  Id. at 1328.

*Before trial*, when the question of validity arises at the preliminary injunction stage, the application of these burdens and presumptions is tailored to fit the preliminary injunction context.  To begin, the patent enjoys the same presumption of validity during preliminary injunction proceedings as at other stages of litigation.  Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc., 134 F.3d 1085, 1088 (Fed. Cir. 1998).  Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge

---

[3]      See also Genentech, 108 F.3d at 1364; H.H. Robertson Co. v. U.S. Steel Deck, Inc., 820 F.2d 384, 388 (Fed. Cir. 1987).

[4]      Hereafter, an unqualified reference to going forward with evidence should be understood to mean both factual evidence and factual and legal argument.  See Tech. Licensing, 545 F.3d at 1327.

validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue. See Purdue Pharma L.P. v. Boehringer Ingelheim GmbH, 237 F.3d 1359, 1365 (Fed. Cir. 2001); Canon, 134 F.3d at 1088.

If, instead, the alleged infringer responds to the preliminary injunction motion by launching an attack on the validity of the patent, the burden is on the challenger to come forward with evidence of invalidity, just as it would be at trial. The patentee, to avoid a conclusion that it is unable to show a likelihood of success, then has the burden of responding with contrary evidence, which of course may include analysis and argument.

While the evidentiary burdens at the preliminary injunction stage track the burdens at trial, importantly the ultimate question before the trial court is different. As this court explained in New England Braiding Co. v. A.W. Chesterton Co., the trial court "does not resolve the validity question, but rather must . . . make an assessment of the persuasiveness of the challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial." 970 F.2d 878, 882-83 (Fed. Cir. 1992). Instead of the alleged infringer having to persuade the trial court that the patent is invalid, at this stage it is the patentee, the movant, who must persuade the court that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue.

B.

In New England Braiding, as part of its exposition on how these burdens operate in the context of a preliminary injunction, the court said:

> The district court cannot be held to have erred in deciding that the patentee failed to make a sufficient showing of likelihood of success

> required to support a preliminary injunction where the evidence presented in support of invalidity *raises a substantial question*, although the defense may not be entirely fleshed out. . . .
>
> While it is not the patentee's burden to prove validity, the patentee must show that the alleged infringer's defense *lacks substantial merit.*

Id. at 883 (emphases added).

The precise meaning of the emphasized language, referring, first, to evidence presented by the alleged infringer to support an invalidity defense that "raises a substantial question," and, second, to the patentee's obligation to show that the alleged infringer's defense "lacks substantial merit," is less than entirely clear, and leaves room for different interpretations.  There are several possible ways a trial court could understand that language.  To begin, the trial court might assume that only the evidence the challenger presents is relevant to the question of whether the challenger succeeds in raising a "substantial question" of invalidity, and that that evidence alone could be the basis for the trial court to deny the injunction.

Alternatively, the trial court could understand its task to involve not only examining the alleged infringer's evidence of invalidity, but also considering rebuttal evidence presented by the patentee and determining whether the patentee can show that the invalidity defense "lacks substantial merit."  This latter understanding more properly acknowledges both parts of the above quote from New England Braiding, and our cases have made clear that the patentee's rebuttal of the challenger's invalidity evidence is an important part of the court's overall evaluation of the evidence.  See, e.g., Genentech, 108 F.3d at 1364 ("In other words, if Novo raises a 'substantial question' concerning validity . . . (*i.e.*, asserts a defense that Genentech cannot show 'lacks substantial merit') the preliminary injunction should not issue" (citing New England

Braiding, 970 F.2d at 882-83)).  A few cases have focused the discussion on whether the challenger succeeded in establishing a substantial question of invalidity without emphasizing that the patentee must be given the opportunity to show that the invalidity defense "lacks substantial merit."  However, the extensive assessment of the evidence on both sides in those cases demonstrates that what underlies those decisions is the necessary balancing of all the evidence before the court.  See, e.g., E.I. duPont de Nemours & Co. v. MacDermid Printing Solutions L.L.C., 525 F.3d 1353, 1358-63 (Fed. Cir. 2008).

Accepting, then, that the trial court looks at both sides of the evidence, the evidence presented by the patentee as well as by the alleged infringer, there remains still a question as to exactly how the trial court is to understand what is meant by saying the challenger's evidence "raises a substantial question" of invalidity.  On the one hand, a trial court could understand that phrase to describe a *procedural step* involving assessment of evidence that the challenger has put forward initially.  If the trial court determines that the challenger's evidence is sufficient to raise "a substantial question" of invalidity, the trial court must then afford the patentee the opportunity to show that the invalidity defense "lacks substantial merit."  In other words, the trial court's determination that a "substantial question" has been raised by the alleged infringer could be considered a trigger for the patentee's opportunity to respond to the evidence presented by the challenger.

An alternative to that way of understanding the phrase "raises a substantial question" is to see it as a description of the question a trial court must resolve regarding the evidence of invalidity at the preliminary injunction stage, after necessarily taking into

account the patentee's responses. That is, it refers to the net of the evidence after the trial court considers all evidence on both sides of the validity issue available at this early stage of the litigation. Under this view, a finding of a "substantial question" of invalidity is a *substantive conclusion* by the trial court, a conclusion that the patentee is unlikely to succeed on the merits of the validity issue because the patentee is unable to establish that the alleged infringer's invalidity defense "lacks substantial merit."

While our cases since New England Braiding have not always been explicit as to which of these two meanings of "raises a substantial question" was intended,[5] our precedents establish that the phrase refers to a *conclusion* reached by the trial court after considering the evidence on both sides of the validity issue.[6] Thus the trial court first must weigh the evidence both for and against validity that is available at this preliminary stage in the proceedings. Then, as explained in New England Braiding, if the trial court concludes there is a "substantial question" concerning the validity of the patent, meaning that the alleged infringer has presented an invalidity defense that the patentee has not shown lacks substantial merit, it necessarily follows that the patentee has not succeeded in showing it is likely to succeed at trial on the merits of the validity issue. 970 F.2d at 883.

---

[5] Compare Purdue Pharma, 237 F.3d at 1363 ("If Roxane defends with evidence raising a 'substantial question' concerning validity . . . , Purdue was required to produce countervailing evidence demonstrating that these defenses 'lack[] substantial merit.'"), with Genentech, 108 F.3d at 1364 ("In other words, if Novo raises a 'substantial question' concerning validity . . . (*i.e.*, asserts a defense that Genentech cannot show 'lacks substantial merit') the preliminary injunction should not issue." (citing New England Braiding, 970 F.2d at 882-83)).

[6] See, e.g., Altana Pharma AG v. Teva Pharms. USA, Inc., No. 2008-1039, 2009 WL 1332741, at *5 (Fed. Cir. May 14, 2009) (citing Genentech); Entegris, Inc. v. Pall Corp., 490 F.3d 1340, 1351 (Fed. Cir. 2007) (citing Genentech); Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357, 1365 (Fed. Cir. 2002) (citing Genentech); Amazon.com, 239 F.3d at 1350-51 (citing Genentech).

C.

Even with that understanding in mind, there remains yet further clarification necessary to assess the trial court's responsibilities in this preliminary injunction setting. First, the weight of evidence necessary for a showing of a "substantial question" regarding invalidity should not be confused with the similarly phrased but quite different test usually known as "substantial evidence" in the record. This latter is a low evidentiary threshold applicable to review of jury verdicts and certain administrative law matters, including matters on appeal to us from the United States Patent and Trademark Office. See, e.g., Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (explaining that "substantial evidence" in the administrative review context means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); In re Gartside, 203 F.3d 1305, 1312 (Fed. Cir. 2000). It is not an evidentiary test applicable to a trial court's decision whether to grant or deny a preliminary injunction.

At the same time, the alleged infringer at the preliminary injunction stage does not need to prove invalidity by the "clear and convincing" standard that will be imposed at trial on the merits. See, e.g., Amazon.com, 239 F.3d at 1358 ("Validity challenges during preliminary injunction proceedings can be successful, that is, they may raise substantial questions of invalidity, on evidence that would not suffice to support a judgment of invalidity at trial."). As we have noted, the trial court must decide whether to grant a preliminary injunction in light of the burdens the parties will bear at trial, sometimes requiring the court to make its decision based on less than a complete

record or on disputed facts whose eventual determination will require trial.  See Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981); New England Braiding, 970 F.2d at 883.

Thus, when analyzing the likelihood of success factor, the trial court, after considering all the evidence available at this early stage of the litigation, must determine whether it is more likely than not that the challenger will be able to prove at trial, by clear and convincing evidence, that the patent is invalid.  We reiterate that the "clear and convincing" standard regarding the challenger's evidence applies only at trial on the merits, not at the preliminary injunction stage.  The fact that, at trial on the merits, the proof of invalidity will require clear and convincing evidence is a consideration for the judge to take into account in assessing the challenger's case at the preliminary injunction stage; it is not an evidentiary burden to be met preliminarily by the challenger.

If the trial court is persuaded, then it follows that the patentee by definition has not been able to show a likelihood of success at trial on the merits of the validity issue, at least not at this stage.[7]  This decision process, which requires the court to assess the potential of a "clear and convincing" showing in the future, but in terms of what is "more likely than not" presently, rests initially in the capable hands and sound judgment of the trial court.

It is important to remember that, however engaged the court may be in the process of determining whether the alleged infringer has shown a "substantial question" of invalidity as we have explained it, that process does not change the court's ultimate decision point.  As the Supreme Court and this court have made clear, the first factor to

---

[7]    See Gonzales, 546 U.S. at 428-29 (plaintiff deemed likely to succeed on the merits at preliminary injunction stage when defendant failed to show it would more likely than not succeed on its affirmative defense at trial).

be dealt with in the preliminary injunction analysis is the traditional one: has the plaintiff established a likelihood of success on the merits?  Asking whether the challenger has raised a substantial question of invalidity in the manner we have described may be a useful way of initially evaluating the evidence, but the ultimate question regarding the first preliminary injunction factor remains that of the patentee's likelihood of success on the merits.  The Supreme Court has stated that the general rules applicable to injunctions in civil actions apply equally to injunctions in patent cases;[8] there is no room for making the substantial question test a substitute or replacement for the established test for injunctions.  That test places the burden on the plaintiff to prove likelihood of success.

Assuming that the patentee has made the requisite showing regarding likelihood of success, it still remains for the trial court to determine, in light of that and the other three factors, whether, as a matter of sound discretion, a preliminary injunction should issue.

D.

With this understanding in mind, we must determine whether the trial court in this case abused its discretion when it denied Titan's motion for a preliminary injunction based on a finding that Titan was unlikely to succeed on the merits of the validity issue. The trial court's decision turned on the issue of obviousness.  Design patents are subject to the nonobviousness requirement of 35 U.S.C. § 103.  See 35 U.S.C. § 171.

---

[8]    See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 394 (2006) ("[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity in patent disputes no less than in other cases governed by such standards.").

Our precedents teach that "the ultimate inquiry under section 103 is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." Durling v. Spectrum Furniture Co., 101 F.3d 100, 103 (Fed. Cir. 1996) (citing In re Rosen, 673 F.2d 388, 390 (CCPA 1982)). Durling explains that this general principle translates into "whether one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design," id. (citing In re Borden, 90 F.3d 1570, 1574 (Fed Cir 1996)), and that this in turn requires that "one must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'" Id. (quoting In re Rosen, 673 F.2d at 391). Once the primary reference is found, other "secondary" references "may be used to modify it to create a design that has the same overall visual appearance as the claimed design." Id. Further, these secondary references must be "'so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other.'" Id. (quoting In re Borden, 90 F.3d at 1575 (alteration in original)).

On appeal, Titan argues that the trial court erred by failing to identify a primary reference. While the trial court did not designate any particular reference as a 'primary reference,' it began its discussion of the obviousness issue by quoting relevant language from Durling. The court then recited Case's argument that three different prior art references—U.S. Patent No. 5,188,683 ("the '683 patent"), U.S. Patent No. 5,337,814 ("the '814 patent"), and the Ram Implement Maxi-Trac (I-3) tire shown in the 1980 Tread Design Guide—"create basically the same visual impression" as the design in the '862 patent, i.e., "a tire tread with lugs that have two bent rib portions and an

enlarged head that extends over the centerline of the tire." <u>Preliminary Injunction Order</u>, 2007 WL 2914513, at *10. The trial court also considered Titan's arguments distinguishing each of these references from the design of the '862 patent. <u>Id.</u>

The trial court would have been entitled to consider any one of these references to be a primary reference. Each of these references, in particular the '683 patent and the Ram Maxi-Trac, shown below, has design characteristics that are basically the same as those of Titan's patented design, a tire tread with interlocking lugs having two bent rib portions that extend diagonally in the same direction of travel toward the tire's centerline and culminate in enlarged, multi-sided lug heads that are closely spaced and extend slightly over the centerline.



Figure 2A of the '683 Patent          Ram Implement Maxi-Trac (I-3)

The trial court also referred to the "supplemental designs" that were provided by Case in two affidavits from a GPX employee. <u>Id.</u> at *11. Those affidavits include pictures from tire catalogs and annual Tread Design Guides from various years. Again,

the trial court was fully entitled to consider these designs to be 'secondary references' even though the court did not use that exact phrase to describe them. The trial court considered Titan's argument that none of these prior art designs appear to have hexagonal lug heads, the main feature of the patented design that is missing from the primary references. However, at least one of those references, the BF Goodrich Silvertown Power Industrial tire, does appear to have enlarged, six-sided lug heads, and therefore qualifies as a secondary reference for modifying one of the primary references to create a design with the same overall visual appearance as the design in the '862 patent.

This process, first finding a primary reference in the prior art and then modifying it with secondary prior art references to demonstrate the claimed design's obviousness, may have a tendency to draw the court's attention to individual features of a design rather than the design's overall appearance. In this respect, it is similar to the "point of novelty" test that until recently was used in the infringement side of design patent law. The "point of novelty" test required a trial court to examine the prior art and the claimed design, identify one or more points of novelty that distinguished the claimed design from the prior art, and then determine whether those points of novelty were included in the accused design, a sometimes contentious analysis. See Egyptian Goddess, Inc. v. Swisa, 543 F.3d 665, 670-71 (Fed. Cir. 2008) (en banc). One perceived problem with the point of novelty test was that it might cause the court to focus "on whether the accused design has appropriated a single specified feature of the claimed design, rather than on the proper inquiry, i.e., whether the accused design has appropriated the claimed design as a whole." Id. at 677.

In Egyptian Goddess, decided after the trial court in this case had ruled on the preliminary injunction issue and after the appeal was briefed and argued, this court abrogated the point of novelty test, along with all of its various ramifications that had accreted over the years, and held that the "ordinary observer" test is the controlling test for design patent infringement.  Id. at 678.  That test was first enunciated by the Supreme Court in Gorham Co. v. White: "[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."  81 U.S. 511, 528 (1871).  By eliminating the point of novelty test for infringement, this court returned the focus of the infringement inquiry to a comparison of the designs as a whole from the perspective of an ordinary observer, while at the same time recognizing that the background prior art may provide context for this analysis.  Egyptian Goddess, 543 F.3d at 676-77.

This court also stated in Egyptian Goddess that "although the approach we adopt will frequently involve comparisons between the claimed design and the prior art, it is not a test for determining validity, but is designed solely as a test of infringement."  Id. at 678.  Thus, even though this court has reestablished the ordinary observer test as the controlling doctrine applicable to design patent infringement, it is not clear to what extent, if any, the doctrine applicable to obviousness should be modified to conform to the approach adopted by this court in Egyptian Goddess.

We need not decide that issue to decide this case.  The trial court correctly looked to our existing precedents, in particular Durling, in rendering its judgment.

Based on our review of the evidence and the arguments made by the parties before the trial court, under the test set forth in Durling we cannot say the trial court abused its discretion in concluding that Titan was unlikely to withstand Case's challenge to the validity of the '862 patent on obviousness grounds. While the trial court's conclusion included the statement that Case had demonstrated a substantial question of validity, it is clear that the trial court applied the correct law governing preliminary injunctions because it accurately set forth the "likelihood of success" standard in the opinion and its analysis demonstrated that it considered and weighed both parties' arguments on the issue of obviousness.

Titan also contends that the trial court erred by invoking the Supreme Court's decision in KSR International Co. v. Teleflex, Inc., 550 U.S. 398 (2007). Titan argues that the particular passage in KSR cited by the trial court, which relates to the "predictable use of prior art elements according to their established *functions*," id. at 417 (emphasis added), has no application in the design patent context because design patents do not have functional elements.

The trial court's decision did not depend on the analysis in KSR. To the contrary, the court recognized that the application of KSR to design patents was "new and untested ground." Preliminary Injunction Order, 2007 WL 2914513, at *11. Design patents, like utility patents, must meet the nonobviousness requirement of 35 U.S.C. § 103, and it is not obvious that the Supreme Court necessarily intended to exclude design patents from the reach of KSR. With or without KSR, we are not persuaded that the trial court abused its discretion in determining that Titan is unlikely to succeed on the merits of the validity issue.

Titan raises several other issues on appeal that we need not address in any detail. First, Titan argues that the trial court erred by failing to analyze secondary considerations of obviousness. We decline to consider this issue because Titan made no arguments regarding secondary considerations before the trial court. See Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1426 (Fed. Cir. 1997). Titan also contends that a preliminary injunction may properly extend to CNH and GPX, the defendants added after the hearing on the preliminary injunction motion. Because we find that the trial court did not abuse its discretion in denying a preliminary injunction based on Titan's failure to show a likelihood of success on the merits, we need not determine the parties against whom an injunction would be proper. Finally, Titan raises the issue in its reply brief of whether the trial court erred in failing adequately to communicate its reasoning behind its decision. In addition to having failed to raise the question properly by not including it as an issue on appeal in its opening brief, see SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1319 (Fed. Cir. 2006), Titan fails to persuade us that the trial court was noncommunicative.

It is also unnecessary for us to reach the various alternative grounds for affirmance presented by Case. These include its argument that the trial court erred in finding that Titan was likely to withstand Case's challenge to the validity of the '862 patent on the ground that the design is primarily functional, its argument that the trial court erred in finding that Titan was likely to succeed on the merits of its infringement case, and its argument that the trial court erred in finding that the irreparable harm factor weighed in Titan's favor. Nor do we need to address Case's argument that an

injunction against it would be improper because Titan failed to show a likelihood of success that Case induced any alleged direct infringement by CNH.

We have carefully considered the parties' arguments on appeal, but we have done so in the context of the standard applicable to preliminary injunction determinations. We remind that there have been no final rulings on the merits of the case, and the trial court is not bound by its preliminary conclusions. The trial court will have the opportunity to reach a final determination on obviousness and other issues at trial.

## CONCLUSION

The trial court did not abuse its discretion in denying Titan's motion for a preliminary injunction.

## AFFIRMED