LOURIE, Circuit Judge.
Hoffmann-La Roche, Inc. (“Roche”) appeals from the decision of the United States District Court for the District of New Jersey, denying Roche’s motion for a preliminary injunction. See Hoffmann-La Roche Inc. v. Apotex Inc., No. 2:07-CV-04417, 2012 WL 869572 (D.N.J. Mar. 14, 2012) (“Preliminary Injunction Order”). Because the district court did not abuse its discretion in denying Roche’s request for a preliminary injunction, we affirm.
Background
I.
This patent appeal relates to methods of treating osteoporosis in post-menopausal women. Roche owns U.S. Patents 7,410,-957 (“the '957 patent”) and 7,718,634 (“the '634 patent”), which cover the administration of Roche’s osteoporosis drug, Boni-va®. The '957 patent is the parent patent of the '634 patent. Both patents disclose and claim methods of treating osteoporosis by orally administering once a month a tablet that contains about 150 mg of a salt of ibandronic acid, which is the active ingredient in Boniva®. Claim 1 of the '634 patent is representative of the claims on appeal:
1. A method for treating or inhibiting postmenopausal osteoporosis in a postmenopausal woman in need of treatment or inhibition of postmenopausal osteoporosis by administration of a pharmaceutically acceptable salt of ibandronic acid, comprising:
(a) commencing the administration of the pharmaceutically acceptable salt of ibandronic acid by orally administering to the postmenopausal woman, on a single day, a first dose in the form of a tablet, wherein the tablet comprises an amount of the pharmaceutically acceptable salt of ibandronic acid that is equivalent to about 150 mg of ibandronic acid; and
(b) continuing the administration by orally administering, once monthly on a single day, a tablet comprising an amount of the pharmaceutically acceptable salt of ibandronic acid that is equivalent to about 150 mg of ibandronic acid.
'634 patent, col.7 ll.23-39. According to the specification, treating osteoporosis with orally-administered ibandronate was known in the art. Id. col.1 ll.59-66, col.2 ll.10-29. However, when administered orally on a continuous basis, ibandronate was known to cause skin irritations and result in digestive tract side effects. Id. To remedy those problems, the inventors discovered that a once-monthly dose of 150 mg, among other infrequent dosing regimens, was effective at treating osteoporosis in postmenopausal women. Id. at col.2 ll.43— 59, col.3 ll.13-24. In 2005, the United States Food and Drug Administration (“FDA”) approved once-monthly Boniva® to treat osteoporosis in post-menopausal women.
II.
In 2007, the Defendants submitted Abbreviated New Drug Applications (“AN-DAs”) to the FDA for approval to engage in the commercial manufacture, use, or sale of generic versions of once-monthly ibandronate products to treat osteoporosis. Thereafter, Roche sued the Defendants in the United States District Court for the District of New Jersey, asserting, inter alia, that the Defendants infringed various *49 claims of the '957 and '684 patents under 35 U.S.C. § 271(e)(2) by submitting their ANDA filings.
During the pretrial proceedings, Roche filed a motion for a preliminary injunction. The court denied the motion, finding that Roche failed to establish a reasonable likelihood that it would prevail against the Defendants’ obviousness challenge. In so finding, the district court relied on six prior art references: (1) the “Update: Biphosphonates” article in the Spring 1999 issue of “Lunar News” (“the Lunar News article”); (2) a 1996 research report by Ravn et al. in the journal “Bone” (“the Ravn study”); (3) U.S. Patent 6,432,932 (“Daifotis”); (4) U.S. Patent 6,143,326 (“Mockel”); (5) a 2001 research report by Reiis et al. published in the “Journal of Bone and Mineral Research” (“the Reiis study”); and (6) U.S. Patent Application Publication No. 2003/0118634 (“Schofield”).
The court issued a series of findings concerning the likelihood that Roche would defeat the Defendants’ obviousness challenge. Regarding the Lunar News article, the court found that the article, in discussing that ibandronate can be given as an oral agent “once/month” and still be “quite potent” to effectively treat osteoporosis, taught two of the three key limitations in the asserted claims: (1) the oral administration of ibandronate, and (2) once-monthly, for the treatment of osteoporosis. Preliminary Injunction Order, 2012 WL 869572, at *3-4. The only limitation that the Lunar News article failed to disclose was the 150 mg dose. Id. at *4.
The court found that the remaining references, in combination with the Lunar News article, showed that Roche was not likely to prevail on the merits of its infringement claim. First, the court found that the Ravn study concluded that daily dosing of ibandronate to postmenopausal women at 2.5 mg and 5 mg levels was an effective treatment, and noted that those two dose levels yield total monthly doses of 75 mg and 150 mg respectively. Id. at *4. Second, the court found that Daifotis taught that “a once weekly dose of iban-dronate in the amount of 35 mg, 40 mg, or 50 mg” would have been “useful for inhibiting bone resorption,” and that those skilled in the art would have likely observed that 35 mg per week corresponds to 5 mg a day, similar to Ravn’s finding that 5 mg per day was an effective dose. Id. at *4-5. Third, the court found that Mockel disclosed “the use of oral ibandro-nate to treat osteoporosis, and teaches that a single dose of ibandronate should be in the range of .1 mg to 250 mg.” Id. at *5. Fourth, the district court found that the Reiis study disclosed that intermittent dosing of ibandronate with a total dose was as effective as continuous administration for treating osteoporosis in postmenopausal women. Id.
The district court found that Schofield’s disclosure was “very, very close” to the patented treatment methods. Id. at *6. Specifically, the court found that Schofield expressed the “total dose concept” for treating osteoporosis, namely, that one may treat osteoporosis by administering a particular amount of ibandronate “as a daily dose, or one may administer the proportionally equivalent amount intermittently,” including a monthly dose that has an equivalent daily dose of between 5 mg and 10 mg, ie., a 150 mg to 300 mg monthly dose. Id. at *5-6.
In addition to those references, the district court considered extensive expert testimony, including concessions by Roche’s technical expert. According to the district court, Roche’s expert made five key concessions: (1) that the Lunar News article provided a motivation to investigate monthly dosing with bisphospho-nates such as ibandronate; (2) that in the *50 2000-02 timeframe the art was trending away from daily dosing and toward longer interval dosing; (3) that, by the critical date, a skilled artisan would have reason to investigate treatment with monthly ibandronate; (4) that once one chooses a particular treatment agent and a particular dosing time interval, determining a dose within the broad therapeutic range is a relatively routine matter; and (5) that, by May 2002, one skilled in the art would have expected that a once-monthly dose of 150 mg of ibandronate would have had some effectiveness. Id. at *6-7.
Finally, the district court rejected Roche’s evidence of teaching away and secondary considerations. The court found that while the prior art showed there were uncertainties in the field, “the field as a whole appeared to be moving toward osteoporosis treatment regimens involving intermittent dosing,” and one-month periods between dosing were “well-known.” Id. at *7. Regarding Roche’s evidence of secondary considerations, the court found that Roche “had not detailed its position on secondary considerations in briefing” its motion for a preliminary injunction and had not “substantively pointed out such evidence.” Id. The court also specifically considered and rejected Roche’s evidence of commercial success. Id. at *7 n. 6.
In considering all the evidence presented, the district court found that Roche failed to prove a likelihood that it would successfully defend against the Defendants’ obviousness challenge. Roche timely appealed from the decision, and while its appeal was pending, the district court concluded on summary judgment that claims 1-8 of the '634 patent would have been obvious to those of skill in the art, relying on the prior art submitted during the motion for preliminary injunction as well as three additional references. See Hoff-mann-La Roche Inc. v. Apotex Inc., No. 2:07-CV-04417, 2012 WL 1637736 (D.N.J. May 7, 2012). No judgment has yet been entered on that decision, and any such judgment will be subject to appeal. We thus express no opinion on the summary judgment proceedings in the context of this appeal. We have jurisdiction over Roche’s appeal of the denial of its motion for a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1) and (c)(1).
Discussion
I.
The grant or denial of a preliminary injunction under 35 U.S.C. § 283 lies within the sound discretion of the district court. Novo Nordisk of N. Am., Inc. v. Genentech, Inc., 77 F.3d 1364, 1367 (Fed. Cir.l996). Accordingly, when a preliminary injunction is denied, to obtain reversal the patentee must show “not only that one or more of the findings relied on by the district court was clearly erroneous, but also that denial of the injunction amounts to an abuse of the court’s discretion upon reversal of erroneous findings.” Reebok Int’l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1555 (Fed.Cir.1994).
As the moving party, Roche had to establish a right to a preliminary injunction in light of four factors: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if a preliminary injunction is not granted; (3) the balance of hardships tipping in its favor; and (4) the impact of the injunction on the public interest. Novo Nordisk, 77 F.3d at 1367. Regarding the likelihood of success on the merits, it was Roche’s burden to show, in light of the burdens and presumptions that will inure at trial, that it will likely prove infringement and that it will likely withstand any invalidity challenge to the patent. Titan Tire Corp. v. Case New Hol *51 land, Inc., 566 F.3d 1372, 1376 (Fed.Cir. 2009).
One ground of invalidity is obviousness. Under the Patent Act, “[a] patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.” 35 U.S.C. § 103(a). Although the ultimate determination of obviousness under § 103 is a question of law, it is based on several underlying factual findings, including (1) the scope and content of the prior art; (2) the level of ordinary skill in the pertinent art; (3) the differences between the claimed invention and the prior art; and (4) evidence of secondary factors, such as commercial success, long-felt need, and the failure of others. Graham v. John Deere Co., 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).
II.
Roche does not take issue with the preliminary injunction framework that the district court employed. Indeed, Roche concedes that the district court adhered carefully to the framework that we set forth in Titan Tire, 566 F.3d at 1376. Instead, Roche raises two primary arguments directed at the district court’s obviousness analysis. First, Roche argues that the court erred by applying an “obvious to try” standard because the prior art taught multiple possible dosing regimens with unpredictable results. To support that argument, Roche points to evidence that its success was not predictable. Second, Roche argues that the district court erred by failing to consider Roche’s evidence of unexpected results.
We disagree. Rather than apply an unsupported “obvious to try” analysis, the district court carefully evaluated each reference and the testimony of Roche’s expert. It was not clear error for the district court to find that the cited references disclose every claim limitation and that, while uncertainties remained, the field was trending towards intermittent dosing based on the total dosing concept, including a once-monthly dose of 150 mg. Indeed, Roche’s expert essentially conceded as much, and the references disclose that it was advantageous to intermittently dose ibandronate to treat osteoporosis in postmenopausal women, including a once-monthly dose; that an effective amount of the intermittent dose can be calculated by multiplying the daily dose by the dosing period; and that 150 mg would be an effective once-monthly dose. Thus, the district court concluded that only “a finite number of identified, predictable solutions” existed. KSR Int’l Co. v. Teleflex Inc., 550 U.S. 398, 421, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). On the record before it, the district court’s conclusion was not clear error.
Second, Roche’s argument that the district court erred by failing to consider evidence of unexpected results lacks merit. It is true in the context of obviousness that “a district court must always consider any objective evidence of nonobviousness presented in a case.” Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc., 617 F.3d 1296, 1305 (Fed.Cir.2010); see also In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig., 676 F.3d 1063, 1075-80 (Fed.Cir.2012). However, in denying Roche’s motion for a preliminary injunction, the district court expressly found that Roche failed to detail its secondary considerations position in its briefing or “substantively point[ ] out such evidence.” Preliminary Injunction Order, *52 2012 WL 869572, at *7. That finding was not clearly erroneous.
It appears that the secondary considerations evidence that Roche points to on appeal was not submitted or mentioned as part of its motion for a preliminary injunction. Instead, Roche attempted, in a single line near the end of its reply brief, to “incorporate by reference” its entire forty-page brief relating to a separate motion, J.A. 21958, a brief that, among numerous arguments, contained a few conelusory sentences with citations to portions of Roche’s evidence of unexpected results. J.A. 24884-36. “District judges are not archaeologists,” and it was not the court’s burden to “excavate masses of papers in search of revealing tidbits” to help Roche satisfy its burden to obtain a preliminary injunction. Nw. Nat’l Ins. Co. v. Baltes, 15 F.3d 660, 662-63 (7th Cir.1994). In any event, a cursory review of Roche’s unexpected results evidence fails to show that the district court clearly erred in light of the references and Roche’s expert’s testimony.
The dissent asserts that “the panel majority mounts a one-sided argument against patent validity” and that the “arguments presented by [her] colleagues were previously considered and rejected during patent reexamination.” Respectfully, the dissent appears to be sitting as a trial court and assumes the majority is also. But we are an appellate court, reviewing, not what the Patent Office decided, but what the district court decided.
We are assuredly aware of the effort and cost of developing a new drug. But we owe the district court deference on review of the grant or denial of a preliminary injunction unless it abuses its discretion or makes clearly erroneous findings that affected the exercise of its discretion. While the dissent makes its own argument for the nonobviousness of the claimed invention, we do not find that the district court made clearly erroneous findings in its determination that Roche did not show a likelihood of success on the question of obviousness, referring to the record presented to the district court at that stage of the proceedings. Ultimately, we decline to find that the district court abused its discretion.
Conclusion
We have considered Roche’s remaining arguments and conclude that they are without merit. For the foregoing reasons, the decision of the district court is
AFFIRMED.
Dissenting opinion filed by Circuit Judge NEWMAN.